UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEITH A. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-00667-JRO-KMB |
| | ) | |
| D. REAGLE, | ) | |
| UTM COCHRAN, | ) | |
| Lt. COOPERIDER, | ) | |
| Ofc. TRUAX, | ) | |
| Ofc. BLANTON, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Keith A. Smith, an inmate within the Indiana Department of Correction ("IDOC") at Pendleton Correctional Facility ("Pendleton"), alleges that Defendants violated his Eighth Amendment rights by failing to protect him from another inmate, Quinton Jennings, who threw a cup of liquid feces through jail cell bars onto Smith's body as he was standing near Jennings's locked cell. Defendants have moved for summary judgment on all claims. For the reasons below, Defendants' motion for summary judgment, dkt. [73], is **GRANTED.**

Smith cannot prove deliberate indifference. There is no dispute that only one Defendant potentially knew about a threat, much less any risk, of injury to Smith from Jennings. And for the one Defendant who may have had actual knowledge of the threat, Defendant Lt. Cooperider, no reasonable juror would conclude that he had actual knowledge of a substantial risk of injury, given the reasonable precautions already in place to protect Smith. Finally, Plaintiff

invited any actual risk of harm when he decided to walk within feet of Jennings's cell of his own free will.

The Court also **GRANTS** Defendants' motion to strike Smith's improper surreplies, dkt. [90], and **DENIES** Smith's motion to appoint counsel, dkt. [94], as moot.

## I.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

A party seeking summary judgment must inform the court of the basis for its motion and identify the admissible evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including admissible deposition testimony, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A Court only has to consider the admissible

2

portions of the record cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572–73 (7th Cir. 2017) (cleaned up). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed. Fed. R. Civ. P. 56(e).

## II.

## FACTUAL BACKGROUND

Because Defendants moved for summary judgment, the Court views and recites the evidence in the light most favorable to Smith and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all times relevant to this case, Defendants worked at Pendleton. Defendant Tabitha Reid née Cochran ("UTM Reid") was a Unit Team Manager. Dkt. 73-14 at 1. Defendant Casey Cooperider ("Lt. Cooperider") was a Correctional Lieutenant. Dkt. 73-13 at 1. UTM Reid and Lt. Cooperider had supervisory positions, which included the authority to move inmates. Dkt. 73-14 at 3; Dkt. 73-13 at 7. Defendants Thomas Truax ("CO Truax") and Kentessa Blanton ("CO Blanton") were Correctional Officers. Dkt. 73-13 at 7. Defendant Dennis Reagle ("Warden Reagle") was the Warden of Pendleton. Dkt. 73-12 at 1.

At all times relevant to this case, Smith was incarcerated at Pendleton. Dkt. 73-1 at 13–14. On July 7, 2022, and July 8, 2022, Smith was housed in R Cellhouse, Range 2, Cell 7, which is a Protective Custody unit. *Id.* at 15. Protective Custody is a "form of physical separation from the general offender

3

population for offenders requesting or requiring protection from other offenders." Dkt. 73-2 at 2. Smith provided janitorial services in R Cellhouse as a "detail worker." Dkt. 73-1 at 18–19. In relevant part, his tasks included dusting metal jail cell bars.

Another inmate, non-party Quinton Jennings, was housed in an Administrative Segregation unit on Range 4, Cell 14 of R Cellhouse. *Id.* at 17; dkt. 73-12 at 2. Like all other inmates in Administrative Segregation, Jennings was not allowed out of his cell without restraints and multiple escorts. Dkt. 73-13 at 5–6. Range 4 is a separate floor, located upstairs from Range 2. Dkt. 73-1 at 18. The cells on Range 4 had open cell bars, so inmates could see outside and would be able to throw things through the cell bars. Dkt. 73-13 at 4.

## B. The July 7, 2022 Threat

On the evening of July 7, 2022, Correctional Officer Julia Womack ("Ofc. Womack," who is not a defendant) told Smith that "'Quentin [Jennings] in Cell 14 on 4 threatened you and me[.]'" Dkt. 73-1 at 26. Smith did not know who Jennings was at this time. *Id.* at 20. Ofc. Womack did not specify what the threat was or how Jennings threatened either of them. *Id.* at 39. But she told Smith "not to deal with Jennings anymore until all this was taken care of." *Id.* at 24. Ofc. Womack seemed "agitated" to Smith, and he could not tell if she was scared or not. *Id.* at 25. Smith interpreted Ofc. Womack's warning as directing, "Don't talk to [Jennings]. Don't deal with him. Don't mess with him." *Id.* at 38.

Ofc. Womack then told Smith that she would write a report to UTM Reid about Jennings's threat, and that Smith should tell his caseworker to transmit

4

that report to Lt. Cooperider. *Id.* at 20, 22. The next day, on July 8, Smith gave a request for interview slip to his caseworker reporting the threat. *Id.* at 22–23. After searching the records at Pendleton, the Correctional Coordinator has been unable to find the request for interview form. Dkt. 73-15 at 2. UTM Reid testified that she did not recall Smith's caseworker, who was her subordinate, giving her the request for interview form or telling her about the threat. Dkt. 73-14 at 2.

On July 7, Ofc. Womack wrote a conduct report charging Jennings with threatening her and Smith. Dkt. 73-8 at 3. She wrote that Jennings asked her if she had a problem with him as she was walking on Range 4. *Id.* When she went downstairs to Range 2, she heard Jennings say that "he is going to attack the detail [worker] and that when he gets out, he is going to attack me too." *Id.* She "took this statement to be a threat to [herself] and the detail [worker] of that side of the cellhouse." *Id.* The next morning, on July 8, Ofc. Womack's supervisor received and processed the conduct report. Dkt. 73-12 at 7. Per protocol, a disciplinary hearing was then scheduled for August 1 to allow time for investigation. *Id.*; *see* dkt. 73-4 at 23–53.

Warden Reagle and Lt. Cooperider testified that Pendleton inmates commonly threatened staff and other inmates. Dkt. 73-12 at 7; Dkt. 73-13 at 5–6. Generally threatening to attack staff or another inmate would warrant a conduct violation and a disciplinary hearing, but not immediate action, such as moving the inmate. Dkt. 73-12 at 7; Dkt. 73-13 at 5–6. Neither Lt. Cooperider nor UTM Reid were notified about any need to move Jennings out of Range 4. Dkt. 73-14 at 3.

5

Smith has not designated any evidence that Lt. Cooperider was aware of any threat before Smith was attacked on July 8.  Lt. Cooperider testified that he was unaware of any threat before Smith was attacked on July 8.  Dkt. 73-13 at 5.  Smith testified that Lt. Cooperider told him on July 12 that he was not completely aware of the threat because he accidentally erased an email from Ofc. Womack about it.  Dkt. 73-1 at 28.  Lt. Cooperider testified that he did not recall telling Smith this or receiving an email from Ofc. Womack about the threat.  Dkt. 73-13 at 6.  After conducting a search of emails from July 7 to July 11—including deleted emails—the Correctional Coordinator did not find an email from Ofc. Womack to Lt. Cooperider regarding the incident.  Dkt. 73-15 at 2–3.

**C. The July 8, 2022 Incident**

The next evening, on July 8, Smith was doing his detail work alone on Range 4 of R Cellhouse.  Smith was not supposed to go to Range 4 by himself to do detail work because he was in Protective Custody.  Dkt. 73-12 at 10.  Nonetheless, Smith decided to walk right next to Jennings's cell on Range 4 (Cell 14) and clean the bars of the cell next door (Cell 15).  Once Smith was about eight feet away from Jennings's cell, dkt. 73-1 at 38, Jennings threw a plastic mug of liquid feces at Smith, *id.* at 40.

The feces hit his body, clothes, and shoes, causing him mental stress and anxiety but no physical injury.  *Id.* at 36, 67–68.  Smith immediately told Ofc. Truax and Ofc. Blanton.  *Id.* at 42–43.  Ofc. Truax took a picture of the side of Smith's body that had the feces on it and notified the Correctional Lieutenant on

duty.  *Id.* at 44.  Ofc. Truax and Ofc. Blanton then gave Smith the opportunity to shower and provided him with clean clothes.  *Id.*

On July 11, Jennings was moved to a restrictive housing unit in G Cellhouse.  Dkt. 73-12 at 8; Dkt. 73-10 at 6.

**D. The Disciplinary Hearings**

On July 11, Lt. Cooperider wrote a conduct report charging Jennings with battery of another offender.  Dkt. 73-9 at 4.  The disciplinary hearing was scheduled for August 1, the same day as the disciplinary hearing for Jennings's threat against Ofc. Womack and Smith.  On August 1, Jennings pled guilty to both offenses.  Dkt. 73-8; 73-9.

On July 13, Lt. Cooperider wrote a conduct report charging Smith with "Unauthorized Area," because he went to Range 4 without an escort, which was forbidden for those in Protective Custody.  Dkt. 73-11 at 4 (Smith Disciplinary Hearing Report).  It was Lt. Cooperider's understanding that Protective Custody Detail workers in R cellhouse are and were at all relevant times trained to seek an escort prior to going upstairs.  Dkt. 73-13 at 5.

Smith pled not guilty, stating that he was never told by anyone not to go to Range 4 alone. Dkt. 73-11 at 1.  The disciplinary hearing officer found Smith guilty, citing Lt. Cooperider's statement that he verbally told Smith not to go to Range 4 by himself.  *Id.*

The parties dispute whether Smith was ever told by anyone not to go to Range 4 by himself without an escort.  But there is no evidence in the record to

suggest that any Defendant knew that Smith was planning to clean Range 4 and stand next to Jennings's cell without an escort.

## III.

## DISCUSSION

The Supreme Court has held that the Eighth Amendment prohibits "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate," including some instances of "violence at the hands of other prisoners," because inmates have lost "every means of self-protection" and their "access to outside aid." *Farmer v. Brennan*, 511 U.S. 825, 828, 833 (1994). However, the Constitution does not provide a remedy for inmates, like Smith, who are already in protective custody and warned to avoid their would-be assailant who is locked securely in a separate cell on a separate floor, but nonetheless wander next to that cell of their own free will. On these undisputed facts, no inmate could prove deliberate indifference.

Smith alleges that Defendants knowingly failed to protect him from Jennings's attack on July 8, 2022, in violation of the Eighth Amendment. Defendants argue that Smith has not produced evidence showing that they knew that Jennings posed a substantial risk to Smith and that, in any case, Smith endangered himself by going to Range 4 without an escort. Dkt. 77. The Court agrees with Defendants.[1]

---

[1] Because the Court grants Defendants' motion for summary judgment based on Plaintiff's failure to prove the subjective prong of deliberate indifference, the Court does not reach Defendants' argument that the harm he suffered was not "objectively serious" or an "excessive risk to inmate health or safety," dkt. 77 at 24–25 (quoting *Sinn v.*

### A. Eighth Amendment Deliberate Indifference Requires Actual Knowledge of Risk

Under the Eighth Amendment, inmates cannot prove deliberate indifference without evidence that a prison official actually knew the inmate was in danger of serious injury.  *LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020); *Santiago v. Walls*, 599 F.3d 749, 756, 758–59 (7th Cir. 2010); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).  Unlike the seriousness of the injury itself, which is judged objectively, *LaBrec*, 948 F.3d at 841, a prison official's state of mind about the risk of injury to an inmate is "judged subjectively" under the Eighth Amendment.  *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018); *accord LaBrec*, 948 F.3d at 841.  "[T]he prison official must have *actual, and not merely constructive, knowledge* of the risk."  *Sinn*, 911 F.3d at 419 (emphasis added) (quoting *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015)).  That is, he must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*  (quoting *Farmer,* 511 U.S. at 837).  An official will only be liable when he or she disregards that risk by failing to take reasonable measures to stop it.  *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Actual knowledge of substantial risk is a holistic, not a checklist, inquiry.  "We must consider the context of the perceived threat as a whole, and whether the evidence, circumstantial, documentary or otherwise, was sufficient to indicate that the officials were aware of the substantial risk."  *LaBrec*, 948 F.3d

---

*Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018)), or that Defendants are entitled to qualified immunity, dkt. 77 at 26–30.

at 843.  In other words, "the circumstances as a whole must be considered." *Id.* Further, the Court "must consider each defendant individually and determine whether the facts allegedly known to that defendant are sufficient." *Id.* at 846.

A defendant has actual knowledge of impending harm if the plaintiff complained to him or her about "a specific threat to his safety." *Gevas*, 798 F.3d at 480 (internal quotation and citation omitted).  However, "[c]omplaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Id.* at 480–81.  A defendant cannot be held liable for awareness of the general risks of violence in a detention facility.  *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005).

## B. No Actual Knowledge of the Threat, Much Less the Risk

Here, there is no dispute of fact that Ofc. Truax, Ofc. Blanton, UTM Reid, and Warden Reagle were unaware of Jennings's threat to Ofc. Womack and Smith.  Smith does not testify that he told any of these Defendants about it and there is no evidence that Ofc. Womack told any of them.  Furthermore, Ofc. Womack's report was processed by a non-party supervisor the next morning, not by any of the above Defendants.  Smith gave his request for interview to his caseworker and there is no record that anyone else received it.

Smith testified that UTM Reid and Warden Reagle *should* have been aware of the danger posed by people in Administrative Segregation and that they *should* have been aware of Ofc. Womack's report and his request for interview.  Dkt. 73-1 at 58–59.  However, there is no evidence that either knew about the threat.

10

"Mere negligence (for example if a prison guard *should* know of a risk but does not) is not enough to state a claim of deliberate indifference under the Eighth Amendment." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (citing *Daniels v. Williams*, 474 U.S. 327, 332 (1986)). "At summary judgment, after drawing all reasonable inferences in favor of the nonmovant, the evidence must allow a jury to conclude that the defendant must have—not might have or should have—been aware of the conditions giving rise to the objectively serious risk to inmates." *Balle v. Kennedy*, 73 F.4th 545, 555 (7th Cir. 2023). There is no such evidence for Ofc. Truax, Ofc. Blanton, UTM Reid, or Warden Reagle. Thus, Smith cannot satisfy his Eighth Amendment claim against these Defendants by proving that they had actual knowledge of the threat against him, much less any serious risk of harm.

## C. No Actual Knowledge of the Risk

There is a dispute of fact as to whether Lt. Cooperider knew about the threat. Even still, the record does not allow a reasonable jury to infer that Lt. Cooperider had *actual knowledge* that Plaintiff faced a risk of serious harm. *See Gevas*, 798 F.3d at 480–81.

*First*, the particular threat Jennings communicated to Ofc. Womack was vague and nonspecific. There is no record of anything more specific—not the words that Jennings actually used or any details that would allow an officer to infer that the threat was serious and imminent, such as a past history between the parties. Indeed, Smith testified that he did not know who Jennings was and

11

that Ofc. Womack did not tell him any specifics about the threat.  He also noted that she seemed "agitated," not necessarily scared.

As seen above, failure to act based solely on awareness of vague and general threats of nonspecific harm to an inmate does not make officers deliberately indifferent.  *Gevas*, 798 F.3d at 480–81; *Sinn v. Lemmon*, 911 F.3d. at 421 (collecting cases).  Indeed, both Warden Reagle and Lt. Cooperider testified that a vague threat like the one reported by Ofc. Womack is common and would not warrant immediate action, such as moving an inmate.

These circumstances are quite different than cases such as *Haley v. Gross*, where the prison officers know a plaintiff's cellmate made multiple, specific threats against the plaintiff but kept the threatening cellmate "deadlocked" with him overnight.  86 F.3d 630, 638–40 (7th Cir. 1996).  Nor is Smith's case like the situation in *Sinn v Lemmon*, where the prison officials were "aware of general patterns of gang violence," the plaintiff was attacked previously by a gang and then discussed with an officer "his desire to be moved for fear of another attack," and "two inmates attacked [by the gang] were attacked again" but prison officials never moved the plaintiff.  911 F.3d at 422.  Here, in contrast, Smith had no prior experiences with Jennings, Jennings was already in Administrative Segregation (that is, he could not leave his cell without restraints and escorts), and Jennings's threats were vague and nonspecific.

*Second*, even if Lt. Cooperider's knowledge of the threat was sufficiently specific, the record does not allow a reasonable jury to infer that Lt. Cooperider deliberately disregarded an imminent and substantial risk to Smith's safety.  *See*

*Santiago*, 599 F.3d at 756 (defendants were properly dismissed from failure to protect claims given the vagueness of the threats and the remoteness of the possibility of an attack).   At all relevant times, Jennings was kept in Administrative Segregation.   He could not leave his cell (without escorts and restraints) to harm Smith or anyone else.   His threat was also under active investigation and scheduled for a disciplinary hearing.   And the parties do not dispute that Lt. Cooperider believed that Smith would always be accompanied by an escort when he was cleaning in Range 4 because Smith was in protective custody.[2]

There is a dispute of fact about whether Lt. Cooperider (or anyone else) told Smith that he had to ask for an escort before going to Range 4 to do his detail work.   But this dispute is immaterial.   Lt. Cooperider thought Smith had been trained with this knowledge.   Dkt. 73-13 at 5.   A reasonable jury could not infer from the record that any defendant knew about a substantial risk to Smith's safety.   And it is Defendants' knowledge that matters for deliberate indifference.

**D. Smith Invited the Risk**

Ultimately, Smith suffered harm because he invited the risk—not because any Defendant failed to protect him.   Smith cannot prove that any Defendant was deliberately indifferent to his risk of harm when the undisputed evidence

---

[2] Actual knowledge aside, all of these measures collectively constitute more than "the minimal, reasonable action of inquiring further and investigating the situation," *LaBrec*, 948 F.3d at 847, and are reasonable responses to the risk presented by Jennings's threats.   *Id.* at 841 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety can nevertheless escape liability if they responded reasonably to the risk, whether or not the harm was ultimately averted." (citing *Farmer*, 511 U.S. at 844–45)).

13

shows that all Defendants assumed reasonable precautions were already in place and Smith willfully chose to encounter the risk.

It is undisputed that Ofc. Womack told Smith about the threat—including the cell number of the inmate—and specifically told him "not to deal" with Jennings. Dkt. 73-1 at 24. Smith testified that he understood Ofc. Womack to be telling him, "Don't talk to [Jennings]. Don't deal with him. Don't mess with him." *Id.* at 38. Yet, the next day, Smith went to Range 4 by himself and cleaned the cell right next to Jennings's cell, putting himself near Jennings and well within throwing distance. In this way, the officer who witnessed the threat took reasonable steps to protect Smith by telling him not to deal with Jennings. Smith then chose to go upstairs to the Administrative Segregation unit by himself and clean the cell right next to the threatening inmate.

Smith argues that it is the officers' responsibility to escort people in protective custody. Dkt. 85 at 2. But he provides no evidence that he asked anyone to escort him or even that an officer witnessed him going upstairs to Range 4. And again, the evidence in the record shows that the only Defendant who potentially had any knowledge of any risk to Smith—Lt. Cooperider—believed that Smith was trained as a detail worker to seek an escort before cleaning Range 4. Dkt. 73-13 at 5. There is no evidence in the record to suggest that any Defendant knew that Smith was planning to clean Range 4 and stand next to Jennings's cell without an escort. A reasonable jury could not infer that any Defendant's failure to do more to protect Smith from Jennings constitutes deliberate indifference.

14

## IV.

## MOTION TO STRIKE

Defendants filed their motion for summary judgment on September 15, 2025. Dkt. 73. Smith responded on December 1. Dkt. 85; *see* Dkt. 83. Defendants then timely filed their reply on December 15. Dkt. 86. On February 2, 2026, Smith filed an affidavit, dkt. 88, and a "brief in support of response in opposition" to Defendants' motion for summary judgment, dkt. 89. The Defendants then moved to strike both filings as improperly filed surreplies under Local Rule 56-1(d). Though Smith does not call any of the filings a "surreply," they are functionally surreplies because they reply to the Defendants' reply.

"[I]t is within the district court's discretion to strike an unauthorized filing." *Cleveland v. Porca Co.,* 38 F.3d 289, 297 (7th Cir. 1994). According to Local Rule 56-1(d),

> A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections.

Defendants' reply neither introduced any new evidence nor objected to the admissibility of the evidence cited in Smith's response. Thus, Defendants argue that Smith's affidavit and brief are unauthorized under Local Rule 56-1(d). Dkt. 91 at 2. They also argue the surreplies were untimely, filed well-beyond the 7-day deadline. *Id.* The Court agrees in both respects.

Therefore, the court **GRANTS** Defendants' motion to strike the surreplies, dkt. [90]. The **clerk is directed** to strike the entries at Dkt. [88] and [89].

## V.

## CONCLUSION

It is undisputed that Warden Reagle, UTM Reid, Ofc. Truax, and Ofc. Blanton were unaware of Jennings's threat.  Even assuming that Lt. Cooperider knew about the threat, a reasonable jury could not find that Lt. Cooperider knowingly disregarded a serious, imminent threat to Smith's health and safety given the circumstances.  Lastly, it is undisputed that Smith was warned about the threat and told not to deal with the inmate, but nevertheless chose to go upstairs to clean right next to the inmate's cell by himself.

Defendants' motion for summary judgment is **GRANTED.**  Dkt. [73]. The court **GRANTS** Defendants' motion to strike the surreply, dkt. [90].  The **clerk is directed** to strike the entries at Docket Nos. [88] and [89].  Accordingly, Smith's motion to appoint counsel, dkt. [94], is **DENIED AS MOOT.**

Final judgment shall now issue by separate entry.

**IT IS SO ORDERED.**

Date: 3/25/2026

_____
Justin R. Olson
United States District Judge
Southern District of Indiana

16

Distribution:

KEITH A. SMITH
267826
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

Christopher McNally
Office of Indiana Attorney General
christopher.mcnally@atg.in.gov

David Matthew Price
Office of the Indiana Attorney General
david.price@atg.in.gov